# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GLORIA GUIDRY, | * | CIVIL ACTION NO. : 2:15-cv-04591 |
| | * | |
| Plaintiff, | * | |
| | * | |
| versus | * | JUDGE MARTIN FELDMAN |
| | * | |
| JANSSEN PHARMACEUTICALS, INC. f/k/a | * | |
| JANSSEN PHARMACEUTICA, INC, f/k/a, | * | |
| ORTH-McNEIL-JANSSEN | * | MAGISTRATE JUDGE |
| PHARMACEUTICALS, INC.; JANSSEN | * | MICHAEL N ORTH |
| ORTHO, LLC; JANSSEN RESEARCH & | * | |
| DEVELOPMENT, LLC; MITSUBISHI | * | |
| TANABE PHARMA CORPORATION; | * | |
| MITSUBISHI TANABE PHARMA | * | |
| DEVELOPMENT AMERICA, INC.; | * | |
| JOHNSON & JOHNSON SERVICES, INC.; | * | |
| and JOHNSON & JOHNSON COMPANY | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

## PLAINTIFF GLORIA GUIDRY'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT BY DEFENDANTS JANSSEN PHARMACEUTICALS, INC., JANSSEN RESEARCH & DEVELOPMENT, LLC, JOHNSON & JOHNSON SERVICES, INC. AND JOHNSON & JOHNSON COMPANY[1]

**NEBLETT, BEARD & ARSENAULT**
JENNIFER M. HOEKSTRA (#31476)
RICHARD J. ARSENAULT (#02563)
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71309
Telephone: (318) 487-9874
Fax: (318) 561-2524
rarsenault@nbalawfirm.com
jhoekstra@nbalawfirm.com

**MORRIS BART LLC**
MORRIS BART (#02788)
MEKEL S. ALVAREZ (#22157)
First Bank & Trust Tower
909 Poydras Street, 20th Floor
New Orleans, Louisiana 70112
Telephone: (504) 599-3385
Fax: (866) 886-6057
mbart@morrisbart.com
malvarez@morrisbart.com

---

[1] To the extent Defendants Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson Services, Inc., and Johnson & Johnson Company incorporated the Motion to Dismiss, Memorandum and Support concurrently filed by Defendants Mitsubishi Tanabe and Mitsubishi Tanabe Pharma Development America, Inc.; this response is similarly incorporated into the concurrently filed Opposition to Defendants Mitsubishi Tanabe and Mitsubishi Tanabe Pharma Development America, Inc. Motion to Dismiss Amended Complaint.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT ............................................................................................................. 2

    I.      PLAINTIFF'S DESIGN DEFECT CLAIMS ARE NOT PREEMPTED ................. 2

    II.     THE COMPLAINT PLEADS PLAUSIBLE CLAIMS FOR RELEIF SUFFICIENT TO SATISFY FEDERAL PLEADING STANDARDS ........................................... 10

           A.  DESIGN DEFECT CLAIMS .............................................................. 12

           B.  FAILURE TO WARN ...................................................................... 14

           C.  CONSTRUCTION OR COMPOSITION DEFECT CLAIM ........................... 15

           D.  BREACH OF EXPRESS WARRANTY CLAIM ............................................. 16

           E.  PLAINTIFF'S REDHIBITION CLAIM ............................................... 17

    III.    PLAINTIFF'S CLAIMS AGAINST THE J&J DEFENDANTS AND ORTHO ARE NOT PREEMPTED ........................................................................... 21

    IV.    REQUEST FOR LIMITED DISCOVERY ............................................... 24

CONCLUSION ........................................................................................................ 25

## TABLE OF AUTHORITIES

**STATUTES**

Federal Rule of Civil Procedure 8(a)(2) ....................................................................11

Federal Rule of Civil Procedure 12(b)(6) ........................................................... *passim*

Louisiana Product Liability Act, Rev. Stat. §§ 9:2800.55–58 .............................. *passim*

**CASES**

*Acree v. Watson Pharm. Inc.*
  No. 10 C7812, 2012 WL 5306296 (N.D. Ill. Oct. 26, 2012) .............................6

*Allred v. Moore & Peterson*
  117 F.3d 278 (5th Cir. 1997) .........................................................................10

*Alston v. Fleetwood Motor Homes of Indiana Inc.*
  480 F.3d 695 (5th Cir. 2007) .........................................................................18

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................ *passim*

*Barcal v.EMD Serono, Inc.*
  No. 5:14-cv-0179-MHH, 2016 WL 1086028 (N.D. Ala. Mar. 21, 2016) ........14

*Batoh v. McNeil-PPC, Inc.*
  No. 3:14-cv-01462 (MPS), 2016 WL 922779 (D. Conn. Mar. 10, 2016) ........13

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................ *passim*

*Beth Israel v. Bartley, Inc.*
  579 So.2d 1066, (La. App. 4th Cir. 1991), *writ denied,* 587 So.2d 696 ...........19

*Bonnette v. Ford Motor Co.*
  88 So.3d 1164 (La. App. 3d Cir. 2012) .........................................................19

*Booker v. Johnson & Johnson*
  54 F. Supp.3d 868 (N.D. Ohio 2014) ..............................................................7, 8

*Brazil v. Janssen Research & Development LLC*
    No. 4:15-CV-0204-HLM (N.D. Ga. Mar. 24, 2016) .........................................................5

*Brown v. Johnson & Johnson*
    64 F. Supp. 3d 717 (E.D. Pa. 2014) ...........................................................................5, 9

*Cassel* v. ALZA Corp.
    2014 WL 856023 (W.D. Wis. March 5, 2014) ...................................................... _passim_

*Conley v. Gibson*
    355 U.S. 41 (1957)..................................................................................................21

*D.W.K. v. Abbott Labs., Inc. (In re Depakote)*
    2015 WL 4776093 (S.D. Ill. Feb. 14, 2015) ................................................................14

*Doe v. Hillsboro Independent School Dist.*
    81 F.3d 1395 (5ᵗʰ Cir. 1996) ....................................................................................20

*Dopson-Trout v. Novartis Pharm. Corp.*
    975 F. Supp. 2d 1209 (M.D. Fla. 2013)......................................................................5, 8

*Duvall v. Bopco, L.P.*
    Civ. A. 15-2404, 2015 WL 7458608 (E.D. La. Nov. 24, 2015) .......................................20

*EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*
    467 F.3d 466 (5th Cir. 2006) ..........................................................................10, 14, 20

*Ezell v. General Motors Corp.*
    446 So.2d 954 (La. App. 3d Cir 1984), *writ denied* 449 So.2d 1350 .........................18, 19

*Frazier v. Mylan, Inc.*
    911 F. Supp. 2d 1285 (N.D. Ga. 2012) ........................................................................5

*Funk v. Stryker Corp.*
    631 F.3d 777 (5th Cir.2011) ....................................................................................11

*Geier v. Am. Honda Motor Co., Inc.*
    529 U.S. 861 (2000) ................................................................................................3

*Gomez v. St. Jude Med. Daig Div., Inc.*
    442 F.3d 919 (5th Cir.2006) ....................................................................................16

*Guidry v. U.S. Tobacco Co., Inc.*
    188 F.3d 619 (5th Cir. 1999) ...................................................................................10

iii

*Holden v. Placid Oil Co.*
  512 F.Supp. 644 (E.D.La.1981) ....................................................................18

*Hunt v. McNeil Consumer Healthcare*
  6 F. Supp. 3d 694 (E.D. La. 2014) ................................................................10

*In re Actos (Pioglitazone) Products Liability Litigation*
  MDL No. 2299, 2014 WL 4286927 (W.D. La. Aug. 28, 2014) ..................23, 24

*In re Darvocet, Darvon & Propoxyphene Products Liability Litigation*
  756 F.3d 917 (6th Cir. 2014) .......................................................................23

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*
  (No. 11) MDL No. 2243, 2012 WL 181411 (D.N.J. Jan. 17, 2012)................24

*In re Katrina Canal Breaches Litig.*
  495 F.3d 191 (5th Cir. 2007) ......................................................................21

*In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*
  MDL No. 2436, 2015 WL 7075916 (E.D. Pa. Nov. 13, 2015).........................5

*In re Vioxx Prods. Liab. Litig.,*
  No. 06-9757, 2015 WL 1909859 (E.D. La. Apr. 21, 2015).............................9

*Ivory v. Pfizer Inc.*
  CIV.A.09–0072, 2009 WL 3230611 (W.D.La. Sept. 30, 2009).......................16

*Jones v. Greninger*
  188 F.3d 322 (5th Cir. 1999) ............................................................10, 14, 20

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*
  677 F.2d 1045 (5th Cir. 1982) ....................................................................20

*Lowrey v. Tex. A&M Univ. Sys.*
  117 F.3d 242 (5th Cir. 1997) ............................................................10, 14, 20

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*
  438 F.3d 465 (5th Cir. 2006) ......................................................................10

*Maness v. Boston Scientific*
  751 F. Supp. 2d 962 (E.D. Tenn. 2010).........................................................12

iv

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*
    369 F.3d 464 (5th Cir. 2004) .............................................................10, 14, 20

*Medtronic, Inc., v. Lohr*
    518 U.S. 470 (1996)............................................................................3

*Mutual Pharmaceutical Company v. Bartlett*
    133 S. Ct. 2466 (2013)....................................................................1, 3

*Papasab v. Allain*
    478 U.S. 265 (1986) ..........................................................................22

*PLIVA, Inc. v. Mensing*
    131 S. Ct. 2567 (2011)......................................................................8

*Pittman v. Upjohn Co.*
    890 S.W.2d 425 (Tenn. 1994).......................................................14, 15

*Rheinfrank v. Abbott Labs., Inc.*
    119 F. Supp. 3d 749 (S.D. Ohio 2015) .......................................7, 8, 15

*Rollins v. St. Jude Medical*
    583 F.Supp.2d 790 (W.D.La.2008).................................................16

*Sellers v. Boehringer Ingelheim Pharm., Inc.*
    881 F. Supp. 2d 992 (S.D. Ill. July 25, 2012) ................................15

*Shah v. Forest Labs Inc.*
    2015 WL 3396813 ..........................................................................8

*Shipp v. McMahon*
    234 F.3d 907 (5th Cir. 2000) ..........................................................21

*Stahl v. Novartis Pharmaceuticals Corp.*
    283 F.3d 254 (5th Cir.2002) ...........................................................2

*Stevens v. Cmty. Health Care, Inc.*
    No. ESCV200702080, 2011 WL 6379298 (Mass. Super. Ct. Oct. 5, 2011) ....................24

*Stripling v. Jordan Prod. Co.*
    234 F.3d 863 (5th Cir. 2000) ..........................................................10

*Sullivan v. Aventis, Inc.*
    No. 14-cv-2939-NSR, 2015 WL 4879112 (S.D.N.Y. Aug. 13, 2015) ............................6, 8

v

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308 (2007)..................................................................................................11

*Wimbush v. Wyeth*
    619 F.3d 632 (6th Cir. 2010) ...................................................................................6, 7

*Wyeth v. Levine*
    555 U.S. 555 (2009)....................................................................................... *passim*

*Yates v. Ortho-McNeil-Janssen Pharm., Inc.*
    808 F.3d 281 (6th Cir. 2015) ........................................................................ *passim*

## OTHER AUTHORITIES

Charles A. Wright & Arthur R. Miller, *Federal Practice And Procedure*
    1357 (2nd ed. 1990) ...............................................................................................21, 25

Federal Food, Drug, and Cosmetic Act ........................................................................4

FDA Medical Review of Invokana, (February 2013)....................................................2

This product liability action arises from Defendants' design, manufacture, and marketing of the prescription drug Invokana®. Invokana is a prescription drug, known as a sodium-glucose cotransporter 2 inhibitor, primarily used for the treatment of type 2 diabetes. Invokana inhibits the body's ability to absorb glucose, working primarily by forcing sugars through the kidneys, causing many Invokana users kidney injuries including ketoacidosis, a serious condition affecting the body's blood-acid concentration that can lead to hospitalization, coma, or even death. As a direct and proximate result of taking Invokana, Plaintiff Gloria Guidry suffered acute kidney injury. Plaintiff seeks compensatory damages and attorneys' fees to recover her losses.

The Complaint states a claim for relief under each theory of liability asserted, with respect to each Defendant. Nevertheless, Defendants Johnson & Johnson Services, Inc. and Johnson and Johnson Company ("Johnson & Johnson") and Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc., Orth-McNeil-Janssen Pharmaceuticals, Inc.; Janssen Ortho, LLC; Janssen Research & Development, LLC (collectively, "Janssen") seek dismissal of Plaintiff's claims on three grounds: (1) the Court should broaden the Supreme Court's ruling in *Mutual Pharmaceutical Company v. Bartlett*, 133 S. Ct. 2466 (2013), to find that design defect claims against brand name drug manufacturers are preempted by federal law; (2) Plaintiff's claims under the Louisiana Products Liability Act (LPLA) and redhibition (Counts 1 – 5) fail to state a claim under Rule 12(b)(6), and (3) the causes of action against Johnson & Johnson and Janssen are preempted. Each of these arguments is without merit.

First, Defendants' preemption argument should be rejected out-of-hand as it amounts to an attempt to foreclose all design defect claims. Second, the Complaint states a claim for relief pursuant to each theory of liability asserted. Third, the claims against Janssen and Johnson &

Johnson are not preempted.  Defendants seek dismissal in large part by repeating catchphrases and concepts from *Twombly* and *Iqbal* (conclusory, formulaic, etc.) and then asserting that the Complaint does not meet the *Twombly/Iqbal* standard. Neither the federal rules (Federal Rules of Civil Procedure 8 and 9) nor United States Supreme Court precedence (*Twombly*, and *Iqbal*) support this type of an attack on the sufficiency of a complaint.

## ARGUMENT[2]

I.      **PLAINTIFF'S DESIGN DEFECT CLAIMS ARE NOT PREEMPTED**

Plaintiff's injuries resulted from the unreasonably dangerous[3] design of Invokana as it is defined under Louisiana Products Liability Act R.S. 9:2800.56.  Defendants do not identify any federal law that would preempt state law through conflict preemption either by impossibility or obstructing congressional intent. Rather, Defendants erroneously extend a recent ruling of the United States Supreme Court considering the federal requirements of generic drug labeling to equally apply to brand-name drugs. Such a reading is overly broad and district courts have since noted the distinction in refusing to apply the ruling to brand-name prescription drugs.

"Conflict preemption" precludes the application of state law when it is "impossible for a private party to comply with both state and federal requirements . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Geier v. Am. Honda Motor Co., Inc.,* 529 U.S. 861, 899 (2000) (internal quotations and citations

---

[2] To the extent Defendants Mitsubishi Tanabe and Mitsubishi Tanabe Pharma Development America, Inc., incorporated the Motion to Dismiss, Memorandum and Support concurrently filed by Defendants Janssen and Johnson & Johnson, this response is similarly incorporated into the concurrently filed Opposition to Defendants Mitsubishi Tanabe and Mitsubishi Tanabe Pharma Development America, Inc., Motion to Dismiss Amended Complaint.

[3] A product is "unreasonably dangerous" under the LPLA if the product meets at least one of the following criteria: (1) the product is unreasonably dangerous in construction or composition; (2) the product is unreasonably dangerous in design; (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided, or (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) (citing La. R.S. §§ 9:2800.55–58).

omitted). In *Wyeth v. Levine*, the Supreme Court lays out "two cornerstones" of the preemption

analysis:

> First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." Second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated…in a field which the States have traditionally occupied,'…we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"
> …
> Impossibility pre-emption is a demanding defense.

555 U.S. 555, 565, 573 (2009) (quoting *Medtronic, Inc., v. Lohr*, 518 U.S. 470, 485 (1996)).

Defendants are trying to shoehorn this case, which involves a brand-name drug, into the

Supreme Court generic drug preemption decision, *Mutual Pharmaceutical Company v. Bartlett*,

133 S. Ct. 2466 (2013), arguing that all design defect claims are preempted as a matter of law. In

essence, Defendants argue they should be able to develop, market, and sell a drug— even if they

know it is unreasonably dangerous— until the FDA affirmatively steps in to stop them, and even

then they should bear no financial responsibility for the damage caused. Thus, Defendants argue

that the FDA should serve as *de facto* judge and jury, leaving Courts without power and consumers

without remedy. Such a premise should be rejected by this Court.

In *Bartlett*, the Supreme Court held that certain design defect claims brought against

manufacturers of **generic** drugs are preempted, because the Federal Food, Drug, and Cosmetic Act

("FDCA") requires a generic drug to have the same design and labeling as its brand name

equivalent. *Id.* at 2471. Therefore it is "not possible" for a generic manufacturer to redesign its

product or strengthen its warning without violating federal law. *Id.* at 2475. Because "federal law

forbids an action that state law requires," state law was preempted with respect to generic drug

manufacturers. *Id.* at 2476–77.

3

In making this holding, *Bartlett* did not overturn its previous holding in *Wyeth*, 555 U.S. 555, which examined whether the FDCA preempted state law claims for failure to warn involving a brand-name drug. In holding there was no such preemption, the Court observed that Congress declined to preempt state tort law when enacting the FDCA or at any time in the FDCA's 70-year history. *Wyeth*, 555 U.S. at 574. "[Congress'] silence on the issue, coupled with its certain awareness of the prevalence of state tort litigation, is powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness." *Id.* at 575. Despite this clear statement, Defendants ask this Court to hold that all design defect claims are preempted by federal law.

Defendants support this outlandish argument by honing in on a single sentence in *Bartlett* — a case that specifically only addressed generic drugs— and attempting to use that sentence to undermine all private causes of action against pharmaceutical companies. However, *Bartlett* preemption simply does not apply to brand-name drugs because the FDCA's "sameness" requirement is not implicated. Not surprisingly, Defendants' argument has been rejected by a number of Courts throughout the country. *See, e.g., In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2436, 2015 WL 7075916, *18–24 (E.D. Pa. Nov. 13, 2015) (design defect claims against brand-name drug manufacturers not preempted by federal law); *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 721 (E.D. Pa. 2014) (holding same); *Frazier v. Mylan, Inc.*, 911 F. Supp. 2d 1285, 1295 (N.D. Ga. 2012) (rejecting preemption defense because defendant "pointed to no federal requirement mandating that [its] product be designed in a certain

way or asserted that the FDA requires a certain design").[4] *See also, Dopson-Trout v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1209, 1215–18 (M.D. Fla. 2013) (rejecting preemption argument on failure to warn claim involving a brand-name drug).

In an attempt to bolster an opposing argument, Defendants themselves present a case that thoroughly analyzes and rejects the extension of *Bartlett* to brand-name drug manufacturers. Defendants cite to *Brazil v. Janssen Research & Development LLC*, No. 4:15-CV-0204-HLM (N.D. Ga. Mar. 24, 2016) (attached to Def. Motion at Exhibit A) as support against a defective design claim even though the court in that case denied Janssen and J&J Defendants' motion to dismiss the design defect claim under preemption. Factually and legally, that case is similar to the one at bar. Like Ms. Guidry in the instant case, the plaintiff in *Brazil* was injured as a result of ingesting Invokana and brought a claim in design defect under state law; and like in Louisiana,[5] Georgia adopts a risk-utility analysis when analyzing design defect claims. *Brazil*, No. 4:15-CV-0204-HLM at *72. The court in *Brazil* likens Georgia's risk-utility analysis to that which the Supreme Court encountered in *Bartlett* when quoting that under the risk-utility approach, "a product is defective as designed if the magnitude of the danger outweighs the utility of the product." *Id.* at *74-75 (citation and internal quotation omitted). Thus, "[a] design defect claim under Georgia law…allows a drug manufacturer to ameliorate the risks of danger of the drug and thus to fulfill its legal duty by improving the warnings attached to the product." *Id.* at *75. After a thorough examination of the trio of Supreme Court precedent on conflict preemption (*Bartlett, Wyeth,* and *Mensing*[6]), the Georgia court's risk-utility analysis led it to hold that the manufacturer of a brand-name drug is not

---

[4] Even though *Frazier* was decided before the Supreme Court's decision in *Bartlett*, the analysis is still valid because "there is no pronouncement in *Bartlett* that conflicts with the reasoning in *Frazier*." *Estate of Cassel v. ALZA Corp.*, No. 12-771, 2014 WL 5330463, *16 n.6 (W.D. Wis. Mar. 5, 2014).
[5] *See* La. R.S. 9:2800.56.
[6] *See infra* Argument Part I.

shielded from liability on a preemption theory if it can cure a design defect under state law by improving the drug's warning and labeling. *See id.* at **56-82.

Rejecting preemption under other circumstances in *Cassel v. ALZA Corp.*, No. 12-771, 2014 WL 856023 (W.D. Wis. Mar. 5, 2014), the Western District of Wisconsin was presented with a similar factual situation and argument as is at issue here. *Id.* at *1. After distinguishing *Bartlett* because the defendants did not sell generic drugs, *id.* at *4-5, the court found the circumstances also were factually dissimilar because the plaintiffs' claims were based on the defendants' "duty to employ an alternative design … from the beginning, *before* FDA approval." *Id.* at *5. As no federal law prohibited the defendants from employing a reasonably safe alternate design, the claims were not preempted. *Id.* at *5- 6. Any other interpretation "would effectively foreclose all design-defect claims against drug manufacturers." *Id.* at *5. *Accord Sullivan v. Aventis, Inc.*, 2015 WL 4879112, *6 (S.D.N.Y. Aug. 12, 2015) (no federal law "restricts a brand-name drug manufacturer from designing a reasonably safe product prior to FDA approval"); *Acree v. Watson Pharm.*, 2012 WL 5306296, *6 (N.D. Ill. Oct. 26, 2012) (holding same).

Here, Plaintiff began taking Invokana within a year of Invokana's FDA approval. Amd. Compl. at ¶¶ 98. Thus, like in *Cassel*, the main focus of Plaintiff's claims is on the original design of Invokana before FDA approval, not Defendants' failure to redesign the drug after FDA approval.  No federal law prevented Defendants from complying with their duty to design a reasonably safe drug. But regardless of the basis of Plaintiff's claims— whether it be in Defendants' initial defective design, or in their failure to redesign Invokana — the result is the same. Defendants are brand-name drug manufacturers and therefore the "sameness" requirement does not apply to

6

them. It is not impossible for Defendants to redesign Invokana, nor was it impossible for them to design it properly in the first place; therefore, plaintiff's claims are not preempted.

The Court should reject Defendants' attempt to extend *Bartlett* and should recognize that even *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281 (6th Cir. 2015) does not support Defendants' position and is distinguishable from the instant case. In *Yates*, the court rejected the premise that all design defect claims are preempted as a matter of law. *Id.* at 294. Instead, the court examined the facts at the summary judgment stage to determine whether compliance with federal law was impossible under those particular circumstances. *Id.* at 297-300. Moreover, the Court reaffirmed its holding in *Wimbush v. Wyeth*, 619 F.3d 632 (6th Cir. 2010), which examined the "duty to exercise reasonable care" in designing a drug prior to FDA approval and found no preemption. *Yates*, 808 F.3d at 300.[7]  Defendants' remaining authority completely fails to address the duty to initially design a reasonably safe product. *See Rheinfrank v. Abbott Labs., Inc.*, 119 F. Supp. 3d 749, 771-72 (S.D. Ohio 2015); *Booker v. Johnson & Johnson*, 54 F. Supp. 3d 868, 875 (N.D. Ohio 2014).

If Defendant's prevail on this motion to dismiss, this ruling would serve to render drug companies completely immune from suit once they obtain FDA approval, regardless of the harm wrought on consumers. This is contrary to the intent of the FDCA and Supreme Court precedent. *See Wyeth*, 555 U.S. at 579 (finding state tort law complements the FDA's work by "uncover[ing]

---

[7] The *Yates* court found that *Wimbush's* rationale did not apply in the circumstances before it because the drug had been on the market for 4 years before the plaintiff started taking the drug, making the argument too attenuated. *Yates*, 808 F.3d at 300. As set forth above, the Court should reject *Yates*. But even if the Court were to find *Yates'* rationale persuasive, it does not apply here. The *Yates* court contrasted the facts before it with the situation in *Wimbush*, in which the drug was only on the market for little over a year. *Id*. Here, the Plaintiff's situation is much more like that in *Wimbush*. Invokana was only on the market for 12 months before Plaintiff began taking the drug, and the FDA has received an alarming number of reports of severe kidney damage in the short period of time that Invokana has been on the market. Amd. Compl. at ¶¶ 21, 47-48.

unknown drug hazards and provid[ing] incentives for drug manufacturers to disclose safety risks promptly"). *Cassel*, 2014 WL 856023, at *5.

Defendants devote a significant amount of time explaining why it is impossible to redesign Invokana. This is largely irrelevant, as the argument rests on a faulty interpretation of impossibility preemption and ignores the fact that Plaintiff's claims focus on the initial design of Invokana prior to FDA approval. Should the Court nevertheless choose to consider Defendants' argument, it is premature. While Defendants suggest an impossibility preemption analysis can occur at the motion to dismiss stage, they rely largely on clear-cut cases that involved generic drugs (*PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011)), or where there is "clear evidence the FDA would not have approved a change...." *Rheinfrank*, 119 F. Supp. 3d at 766). Defendants' other authority — *Yates, Rheinfrank, Booker* and *Shah v. Forest Labs Inc.*, 2015 WL 3396813 (N.D. Ill. May 26, 2015)— addressed this fact-specific issue at the summary judgment stage, after discovery. Should the Court choose to entertain this argument, any analysis should occur after discovery so that the issues can be fully developed.[8] "Impossibility pre-emption is a demanding defense," on which the Defendants bear the burden of proof. *Wyeth*, 555 U.S. at 572. Defendants have not met that burden.

A variety of jurisdictions have allowed design defect claims based in state law under circumstances involving brand-name drugs, specifically rejecting *Bartlett*'s application to brand-name drugs, for various reasons including the manufacturer's ability to strengthen a drug's warning label or identifying a safer alternative prior to obtaining FDA approval. *See Dopson-Troutt v. Novartis Pharms. Corp.*, 975 F. Supp. 2d 1209, 1216-17, n. 4 (2013) (holding that *Mensing* and *Bartlett* do not apply to label changes involving brand-name drugs and further stating that "[w]hen

---

[8] *See* Section E, *infra*.

describing what would be 'major changes,' [the federal regulation] expressly excludes changes described in the CBE regulation."); *Sullivan v. Aventis, Inc.*, No. 14-cv-2939-NSR, 2015 WL 4879112, at *6 (S.D.N.Y. Aug. 13, 2015) (holding that there is no preemption because there is no federal law that prevents a manufacturer from choosing a state-law-compliant safer alternative prior to FDA approval, nor is there a federal law that prevents a brand-name drug manufacturer from strengthening its warning labels); *Brown*, 64 F. Supp. 3d at 721 ("The Supreme Court has not addressed whether federal law can preempt state law design defect claims brought against manufacturers of brand-name or non-prescription drugs. I conclude that its preemption cases do not extend to the manufacturers of these products."); *Cassel*, 2014 WL 856023, at *5 (holding that defendants did not prove preemption due to impossibility because they could have submitted a different design prior to obtaining FDA approval and they did not show that the FDA would have prohibited them from doing so); *Brazil*, No. 4:15-CV-0204-HLM at *75-76 ("As the [Supreme] Court explained in [*Wyeth*] and *Mensing*, a brand name drug manufacturer may use the FDA's CBE regulation to unilaterally change its labeling without prior FDA approval. In doing so, a brand name drug manufacturer may comply with both state and federal law.").

Although the United States District Court for the Eastern District of Louisiana has not yet ruled on the preemption issue involving a brand-name prescription drug involved in a state tort claim,[9] it has stated its belief in the important policy reasons for not reading *Bartlett* and *Mensing* too broadly, relying on the Supreme Court in *Wyeth*:

> As the Court recognized in [*Wyeth*], state-law tort suits play an important 'complementary' role to federal drug regulation. The FDA has limited

---

[9] In a recent case in the United Stated District Court for the Eastern District of Louisiana, the court in denying a motion for summary judgment noted that "the scope of the *Bartlett* holding has been the subject of much debate among lower courts [and] is therefore not settled." *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, No. 06-9757, 2015 WL 1909859, at *10 (E.D. La. Apr. 21, 2015).

> resources, which constrain its ability to police the drug market and protect the public. 'State tort suits uncover unknown drug hazards and provide incentives for drug manufacturers to disclose safety risks promptly. They also serve a distinct compensatory function that may motivate injured persons to come forward with information. Moreover, because the FDCA does not create a private right of action, products liability suits provide injured consumers like Plaintiff with an important remedy not available under federal law.

*Hunt v. McNeil Consumer Healthcare*, 6 F. Supp. 3d 694, 704 (E.D. La. 2014) (citations omitted).

This Court should deny Defendants' attempts to extend the generic-preemption ruling in *Bartlett* and *Mensing* in this case.

## II.    THE COMPLAINT PLEADS PLAUSIBLE CLAIMS FOR RELEIF SUFFICIENT TO SATISFY FEDERAL PLEADING STANDARDS

When ruling on a Rule 12(b)(6) motion to dismiss, the "court should construe the complaint in the light most favorable to the plaintiff[.]"*EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA,* 467 F.3d 466, 467 (5th Cir. 2006) (*citing Lowrey v. Tex. A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997)), s*ee also Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) (*quoting Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). If a party raises the defense of lack of personal jurisdiction, the non-moving party bears the burden of proving personal jurisdiction. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Although the non-moving party bears the burden, "[w]hen a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case . . . the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999); see also *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (explaining that we "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts.").

A court sitting in diversity "may exercise personal jurisdiction only to the extent permitted a state court under applicable state law." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). All factual allegations must be taken as true, and all inferences must be drawn in favor of the Plaintiff. *Id.* A complaint survives dismissal so long as it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts have stressed that it is important to read the particular counts in the overall context of the entire complaint. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("When reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'") (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing the pleader is entitled to relief" and "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. 662. The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal,* 566 U.S. at 662. In this case, Ms. Guidry's kidney failure occurred because of the mechanism of the drug; failure resulted by overworking her system because Invokana was forcing the sugars in her body through her kidneys to expel them from her system. Amd. Compl. at ¶ 54.

11

*Twombly* did not overturn the well-established practice of notice pleading in federal court. *See Twombly,* 550 U.S. at 570. Nor did *Twombly* require a plaintiff to state enough facts to show it is likely to prevail on its claims. Rather, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is impossible and 'that a recovery is very remote and unlikely.'" *Id.* at 556. *Twombly* "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.*

Under this standard, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S at 663. Moreover, the plaintiff is entitled to the "benefit of imagination." *Twombly*, 550 U.S. at 563. FED. R. CIV. P. 8(e) provides that "[p]leadings must be construed so as to do justice." When deciding on a motion to dismiss, the court should draw on its judicial experience and common sense. *Maness v. Boston Sci.*, 751 F. Supp. 2d 962, 966 (E.D. Tenn. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).

### A. Design Defect Claims

Plaintiff properly stated a claim for design defect (Count 2). To state a viable claim that a product is "unreasonably dangerous in design," a plaintiff must demonstrate that at the time the product left the manufacturer's control: (1) "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage," and (2) "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." La R. S. Ann. § 9:2800.56.

The allegations in the Complaint state a plausible claim for relief and, despite Defendants' generalized protestations to the contrary, are not merely formulaic recitations of elements. The Complaint alleges Defendants designed Invokana in a condition that rendered it unreasonably dangerous in a variety of respects (Amd. Compl. at ¶ 16), including, *inter alia*, that Invokana's design causes excess glucose to be excreted by the kidneys in a population of patients known to be at risk for kidney disease (*id.* at ¶ 19); the FDA recently issued a health advisory regarding Invokana and ketoacidosis, and subsequently required Defendants to change the label of Invokana to warn of ketoacidosis, which can cause organ failure; and serious urinary tract infections, which can lead to kidney infection and kidney failure. *Id.* at ¶¶ 47-48. Furthermore, Plaintiff alleged the use of Invokana was more dangerous than other risks associated with the treatment of diabetes (*id.* at ¶ 164(b)); the benefits of Invokana were outweighed by the risks (*id.* at ¶ 164); there are other design alternatives that have a better safety profile (*id.* at ¶ 170); and there were safer alternative diabetes medications that do not carry the risk of Invokana. *Id.* at ¶¶ 31, 155, 164(d), 169-170.

Plaintiff also alleged that other diabetes medications have lower risk than Invokana and are equally effective. *Id.* at ¶¶ 164. Had Plaintiff and her healthcare provider known of the risks and dangers associated with Invokana, she would not have been prescribed or used the drug. *Id.* at ¶¶ 146, 150, 188. And as a direct, foreseeable, and proximate result of Defendants' defective design of Invokana, Plaintiff was injured. *Id.* at ¶ 98. These allegations adequately state a claim.[10]

---

[10]Defendants' reliance on *Batoh v. McNeil-PPC, Inc.*, No. 3:14-cv-01462 (MPS), 2016 WL 922779 (D. Conn. Mar. 10, 2016) and *Barcal v. EMD Serono, Inc.*, No. 5:14-cv-0179-MHH, 2016 WL 1086028 (N.D. Ala. Mar. 21, 2016) is misplaced. In *Batoh*, the ruling was made at the summary judgment stage, after the parties conducted discovery. *Id.* at *1. This is not the case here. Further, the *Batoh* case is about Motrin, which was on the market for decades before it allegedly caused plaintiff's injuries. In *Barcal*, the plaintiff alleged an injury relating to a fertility drug that was on the market for decades before it caused the plaintiff's injuries, and it was more than 20 years after the label was approved that plaintiff filed suit. *Id.* at *1-2. Here, Plaintiff alleged kidney failure, kidney damage reduced kidney function and she pointed to action from the FDA alerting to dangers that can directly lead to kidney failure, kidney damage and reduced kidney function. Amd. Compl. at ¶¶ 17, 18, 26, 31, 47-48, 54-59, 216. The facts in *Batoh* and *Barcal* are vastly different from the facts presented here where Plaintiff began using Invokana within a year of the label being approved and Invokana becoming commercially available, and where her

### B. Failure to Warn

Next, Defendants' challenge Plaintiff's failure to warn claim (Count 3). Defendants erroneously assert that because Invokana's label mentioned the risk of kidney injury, Plaintiff cannot state a claim as a matter of law. Simply because the Invokana label mentioned the type of injury Plaintiff ultimately suffered does not mean Defendants fulfilled their duty to warn. Rather, the warning must be *adequate*.[11]  "The adequacy of a drug manufacturer's warnings is normally a question of fact." *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 429 (Tenn. 1994). Defendants also erroneously claim that Plaintiff did not adequately allege how the warnings were defective or how the defect caused Plaintiff's injuries.

A determination of the adequacy of a warning most definitely involves determining whether the drug warns of the severity of the risks associated with use. For instance in *D.W.K. v. Abbott Labs., Inc. (In re Depakote)*, 2015 WL 4776093 (S.D. Ill. Feb. 14, 2015), the Court denied summary judgment on a failure to warn claim where the drug contained a black box warning regarding the injury, but allegedly failed to warn of the severity or magnitude of the risk. *Id.* at *4-9. In ruling, the Court reasoned: "In order to determine whether or not the warnings are adequate, the Court must look to whether the warnings are sufficient in form, content, and intensity. The adequacy of the warning is measured not only by what is stated, but also by the manner in which it is stated." *Id.* at *4 (internal citation and quotation omitted). *See also, Accord, Sellers v. Boehringer Ingelheim*

---

injuries manifested quickly thereafter, leading to this suit.  Plaintiff's design defect theory of liability rests on Defendants' duty to design and develop a reasonably safe product prior to FDA approval - a duty which is clearly not preempted.

[11] Without citing support, Defendants seek to improperly introduce labeling information claimed to be in effect at the "relevant" time. Defs. Mem. at 14. The labeling information that is actually applicable to this case is a factual issue that is not properly decided at the motion to dismiss stage. Plaintiff's allegations are to be taken as true. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 467 (5th Cir. 2006) (*citing Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)), s*ee also Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) (*quoting Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

*Pharm., Inc.*, 881 F. Supp. 2d 992, 1004–05 (S.D. Ill. July 25, 2012) (denying motion to dismiss in Pradaxa MDL, in which the label warned of the risk of a bleeding event but not the extent of the risk); *Rheinfrank v. Abbott Labs., Inc.*, 119 F. Supp. 3d 749, 771 (S.D. Ohio 2015) ("the Court is not persuaded that the mere fact that the label listed Depakote as a Pregnancy Category D drug and included a Black Box warning indicates that the label was adequate as a matter of law. Rather, there is a question of fact as to whether the 2003 Depakote warning was adequate."). Warnings are considered adequate only when they contain "full and complete disclosure of the potential adverse reactions to the drug." *Pittman*, 890 S.W.2d at 429.

Contrary to Defendants assertion, the Complaint in the instant case adequately alleges how the warnings provided were defective and how they caused Plaintiff's injury. *See, e.g.,* Amd. Compl. at ¶¶ 48- 52, 54-59, 83–87 (knowledge and failure to warn); *id.* at ¶¶ 137-140 (inadequate warning); and *id.* at ¶¶ 177–186 (proximate cause). As such, Plaintiff's Complaint states a claim for failure to warn.

### C. Construction or Composition Defect Claim

Defendants' assert that Count 1 should be dismissed for failure to meet pleading standards.  To establish a construction or composition defect claim, under Louisiana law, a plaintiff must establish that, at the time the product left its manufacturer's control, the product "deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R. S. § 9:2800.55. To prevail on a construction or composition defect claim, a plaintiff must show that: (1) the defendant is a manufacturer of the product; (2) the product proximately caused the plaintiff's damage; (3) the damaging characteristic of the product rendered it "unreasonably dangerous in construction or

composition"; and (4) the plaintiff's damages arose from a reasonably anticipated use of the product. *See Rollins v. St. Jude Med.*, 583 F.Supp.2d 790, 800 (W.D. La. 2008) (citing *Gomez v. St. Jude Med. Daig Div., Inc.*, 442 F.3d 919, 932 (5th Cir. 2006)); *Ivory v. Pfizer Inc*., CIV.A.09–0072, 2009 WL 3230611 (W.D. La. Sept. 30, 2009).

Plaintiff has stated facts consistent with a claim for a defect in construction or composition under La. R.S. § 9:2800.55 to survive this motion. Plaintiff alleges numerous facts in her Amended Complaint that Invokana is unreasonably dangerous in construction or composition, including the following: (1) Defendants and the FDA were flooded with post-market analysis reports relating to the risks of the medication following approval by the FDA in 2013 (Amd. Compl. at ¶¶ 31, 47-48, 54-59), and (2)  Defendants knew the construction of the drug could cause kidney failure, ketoacidosis and kidney injury to be exposed to the drug, increasing the urination rate (osmotic diuresis) in order to block sugar from being re-absorbed into the kidney.  The composition of the drug did not reduce blood sugar by any mechanism other than through the urine, and therefore through the kidneys. *Id*.  The drug was intentionally constructed by the Defendants to overwork the kidneys.   Contrary to Defendants' assertion, the Complaint adequately alleges how the composition of the Invokana drug was unreasonably dangerous and how it caused Plaintiff's injury. *See, e.g.,* Amd. Compl. at ¶¶ 75, 83–86 (knowledge and failure to warn); *id*. at ¶ 85–88 (inadequate warning); and *id*. at ¶¶ 31, 54-59 (proximate cause). As such, the Complaint states a claim for unreasonably dangerous construction or composition.

**D. Breach of Express Warranty Claim**

Defendants assert that Count 4 should be dismissed for failure to meet pleading standards. To establish a breach of express warranty claim under the LPLA, a plaintiff must show that a product is

unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product. LA. R.S. § 9:2800.58. In the Amended Complaint, Plaintiff alleges that Defendants expressly warranted that Invokana was safe and fit for its intended purposes and had been adequately tested and found to be a safe and effective treatment for diabetes. (Amd. Compl. at ¶¶ 75, 83–86).

These facts are sufficient to allege a breach of express warranty claim: (1) Defendant advertised its product and promoted its product to patients and doctors (Amd. Compl. at ¶¶ 27-29, 35-36, 65-68, 72, 89), and (2) Plaintiff suggests that she was induced to take Invokana because of an alleged express warranty. (Amd. Compl. at ¶¶ 70, 71, 74, 75). As such, Plaintiff's Complaint states a claim for breach of express warranty.

**E. Plaintiff's Redhibition Claim**

Plaintiff brings forth a claim of redhibition because Invokana contains a vice or defect which renders it useless or makes its use so inconvenient that buyers would not have purchased it.  Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520.  A claim for breach of warranty, including allegation of injury sustained because of hidden defect, falls under the definition of redhibition.  *Holden v. Placid Oil Co.*, E.D.La.1981, 512 F.Supp. 644.  During the manufacturing of Invokana, the defendants' deviation from industry standards resulted in their creating a product that would cause patients to suffer ketoacidosis, kidney injury, and kidney failure.  Laypersons, such as the plaintiff, would have no way of knowing about a drug manufacturer's deviation from industry standards in the creation of a drug and, therefore, this would be a hidden defect rendering the product manufactured useless or making its use so inconvenient that the plaintiff would not have purchased it.   A drug that would cause a person to

17

suffer ketoacidosis, kidney injury, and kidney failure is certainly a product that, if not entirely useless, is so inconvenient that buyers would not have purchased it had they known of such defects.

The term "defect," as contemplated in articles relating to redhibition means a physical imperfection or deformity, or lacking necessary components or level of quality. *Ezell v. General Motors Corp.*, 446 So.2d 954 (La. App. 3 Cir 1984), *writ denied* 449 So.2d 1350. In a suit for redhibition under Louisiana law, a buyer must prove: 1) that the thing sold is absolutely useless for its intended purpose or that its use is so inconvenient that it must be supposed that he would not have bought it had he known of the defect; 2) that this defect existed when he purchased the thing, but was neither known nor apparent to him; and 3) that the seller was given the opportunity to repair the defect. *Alston v. Fleetwood Motor Homes of Indiana Inc.*, 480 F.3d 695 (5th Cir. 2007).

Invokana is useless for its intended purpose. Invokana is a drug for the treatment of type II diabetes. When taken, Invokana has the tendency to cause ketoacidosis, kidney injury, and kidney failure. Invokana use causes additional injuries that are more harmful than the disease that the drug is supposed to treat, which renders the drug absolutely useless. In the alternative, the use of Invokana is so inconvenient that it must be supposed that the plaintiff would not have purchased it had she known of the defect. Plaintiff was living with having to manage her type II diabetes. After taking Invokana, Plaintiff must now manage, in addition to her diabetes, the conditions of ketoacidosis, kidney injury, and kidney failure, including hospitalization to treat these conditions. Certainly this is so inconvenient that, had Plaintiff known about these defects in Invokana, she would have not purchased the drug.

Invokana was defective when it was purchased by Plaintiff. When a buyer maintains a redhibition action against manufacturer, proof need only be made that the defect occurred in the

manufacture of the product. *Beth Israel v. Bartley, Inc.*, 579 So.2d 1066, (La. App. 4 Cir. 1991), *writ denied,* 587 So.2d 696.  A buyer's evidentiary burden in a redhibition action is that it must be more probable than not that nonapparent defect existed at the time of the sale. *Ezell v. General Motors Corp.*, 446 So.2d 954 (App. 3 Cir. 1984), *writ denied,* 449 So.2d 1350. The buyer who asserts a redhibition claim may prove the existence of redhibitory defects at the time of the sale not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of the sale. *Bonnette v. Ford Motor Co.*, 88 So.3d 1164 (La. App. 3 Cir. 2012).

Invokana was defective because Defendants manufactured a drug that was unsafe as a result of deviation from industry standards requiring drug companies to provide consumers with safe, effective products.  The manufacturers of Invokana failed to do this.  Defendant manufacturers had every opportunity to cure the defect because they had every opportunity to create a drug that was safe and effective and complied with industry standards.  As a result of these deviations from industry standards, Plaintiff suffered injuries including ketoacidosis, kidney injury, and kidney failure.  These deviations rendered Invokana completely useless or, at the very least, made the use of Invokana so inconvenient that Plaintiff would not have purchased it had she known about the defects in this drug.  Had Plaintiff known that Invokana was a defective drug that would cause her such grievous injuries, she certainly would have looked for other options in the management of her type II diabetes.

The allegations made by Plaintiff Guidry are well-pled in sufficient detail to remain pending a Rule 12(b)(6) dismissal.  All legal considerations and alleged facts point to the conclusion that dismissal under Rule 12 at this point would be, if not error, certainly premature. The Federal Rules

of Civil Procedure require the party moving for dismissal to carry the burden of proving that no claim has been stated. A Motion to Dismiss tests the formal sufficiency of the statement of the claim for relief. *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996). A Motion to Dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (*quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)). *Duvall v. Bopco, L.P.*, Civ. A. 15-2404, 2015 WL 7458608, at *1-2 (E.D. La. Nov. 24, 2015). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA,* 467 F.3d 466, 467 (5th Cir. 2006) (*citing Lowrey,* 117 F.3d at 247), s*ee also Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) (*quoting Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). The District Court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This strict standard of review under Rule 12 (b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 1357 (2nd ed. 1990); *Shipp v. McMahon*, 234 F.3d 907, 911 (5th Cir. 2000), *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

"The issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims." *Doe*, 81 F.3d at 1401. The plaintiff's complaint should not be

20

dismissed on a Rule 12(b)(6) Motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Id*. at 1402-3. Plaintiff has outlined facts that are sufficient to fulfill any pleading requirement under *Twombly* or *Iqbal* and that are factually supported to the extent Plaintiff is able without having conducted any discovery in the case. Since there remains the possibility that the other claims presented may not provide legal remedy, as argued by defendants in these motions, dismissal under Rule 12(b)(6) is inappropriate.

### III.   PLAINTIFF'S CLAIMS AGAINST THE J&J DEFENDANTS AND ORTHO ARE NOT PREEMPTED

Next, Defendant tries to argue that all claims against Johnson & Johnson, Johnson & Johnson Services Inc (the "J&J Defendants") and Janssen Ortho LLC ("Ortho") are preempted.  They do this by hiding behind their agreements with the other Defendants. As Federal Law requires approval of a New Drug Application (NDA) before marketing a new drug, Ortho and the J&J Defendants argue that, as they are not the NDA holder, they have no ability to propose changes or supplement the NDA.

The J&J Defendants and Janssen Ortho claim that as Janssen Pharmaceuticals Inc. is the sole NDA application, their role is like a generic drug manufacturer, unable to change the design or labeling of Invokana, and immune from liability. This argument is based on the identity of Invokana's NDA holder, a factual issue outside of the Complaint (regardless of Plaintiffs allegations). Pursuant to Rule 12(d), the Court should either exclude this extraneous material, or convert Defendant's motion to one for summary judgment, first giving Plaintiff ample notice and time to conduct the necessary discovery. However, even if the Court takes judicial notice of Defendants' factual assertions on the NDA holder matter, the Court must construe all facts "in the light most favorable to the [Plaintiff]." *Papasab v. Allain*, 478 U.S. 265, 283 (1986).

21

In inserting this factual issue, Defendants conveniently neglect to mention that other "non-NDA applicants" were active participants in the FDA approval process. The FDA's medical review identifies Mitsubishi as "the sponsor's partner," and explains that it received and relied on Mitsubishi's research and clinical trials during the approval process. See FDA Medical Review of Invokana at 29-30, available at

www.accessdata.fda.gov/drugsarfda_docs/nda/2013/204042Oril1s000MedR.pdf (Feb. 8, 2013).  As this motion was filed before Plaintiff received or had the opportunity to conduct any discovery, Plaintiff lacks access to the evidence necessary to determine the full extent of ALL of the Defendants' involvement in the approval process. Furthermore, Plaintiff does not have access to information on Janssen Ortho's or the J&J Defendants' influence over other pivotal issues affecting the design, labeling, marketing, and promotion of Invokana. Construing all facts in the light most favorable to Plaintiff, Defendants certainly cannot show preemption should apply.

The recent case *In re Actos (Pioglitazone) Products Liability Litigation*, MDL No. 2299, 2014 WL 4286927 (W.D. La. Aug. 28, 2014) examined many of these same issues, albeit with the benefit of a fully developed record. In Actos, plaintiffs filed suit against Takeda and Eli Lilly for damages caused by a brand-name drug. The defendants had a co-promotion agreement regarding the sale of Actos in the U.S., but Takeda held the NDA. *Id* at *1-2. The jury ultimately entered a verdict against both defendants. *Id*. at *20-23. Eli Lilly sought post-judgment relief under the preemption doctrine, arguing it should be treated like a generic drug manufacturer. *Id*. at *1, 17-23. The court examined the factual record, noting that Eli Lilly participated in formulating the drugs label and marketing materials. *Id*. at *9, 11-13, 19.  Therefore, the rationale underlying preemption of claims against generic drug manufacturers was not applicable. *Id*. at *17. Eli Lilly had the ability to affect

22

the drug's warnings and the duty to provide an adequate warning, so preemption did not apply. *Id.* at *19.

Here, Defendants rely on *In re Darvocet, Darvon & Propoxyphene Products Liability Litigation*, 756 F.3d 917 (6th Cir. 2014), which involved claims brought against a former brand-name drug manufacturer that sold its NDA after a drug went generic. *Id.* at 923-24. The plaintiff filed suit eight years later, claiming defendant continued to manufacture a generic form of the drug. *Id.* at 940. Because the defendant had completely divested itself of its rights over the drug and had no power over the drug's warnings, the court found plaintiff's warning-based claims were preempted. *Id.* However, *In re Darvocet* is distinguishable in two key respects: Invokana is not a generic drug, and Defendants have not sold all rights to them. Defendants' other authority, all of which involve claims against the distributor, are equally distinguishable. *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.* (No. 11) MDL No. 2243, 2012 WL 181411 (D.N.J. Jan. 17, 2012); *Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298 (Mass. Super. Ct. Oct. 5, 2011).  The J&J Defendants and Janssen Ortho LLC are not middlemen distributors, nor are they powerless generic drug manufacturers. As with the co-promoters in Actos, there is no basis for preemption in the instant case.

Because this motion was filed before discovery has occurred, Plaintiff is in the position of making legal arguments in the abstract, based only on publicly available information. Without discovery, Plaintiff cannot know the precise powers or rights the J&J Defendants and Janssen Ortho LLC retained under the licensing agreement, any role in the labeling, design, promotion, and sale of Invokana, or the extent of its participation in the FDA approval process. These facts are highly relevant to the Court's analysis. *See In Re Actos*, 2014 WL 4286927, at *9, 11-13, 19 (analyzing co-

promotion agreement, marketing activities, involvement in warning-related decisions, and communications with the FDA as part of the preemption analysis). Therefore, Defendants preemption arguments are premature.

As we remain at the motion to dismiss stage, Plaintiff lacks the factual record necessary to fully formulate her argument. But here, like in *Actos*, multiple pharmaceutical manufacturers have entered into an agreement regarding the marketing and distribution of brand name drugs that caused significant harm. Also, like in *Actos*, there is no "sameness" requirement preventing any Defendant from ensuring that Invokana is not inherently defective or that Invokana's labeling, marketing documents, and other materials adequately warn of the risks. Viewing all factual allegations in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, there is no basis for preemption in the instant case.

## IV.   REQUEST FOR LIMITED DISCOVERY

To the extent this Court chooses to entertain the jurisdictional and preemption arguments proposed by Defendants, Plaintiff respectfully requests leave to conduct limited discovery. "A district court has discretion whether to hold in abeyance a decision on a motion to dismiss for lack of personal jurisdiction to enable the party to conduct discovery." 5A Federal Prac. & Proc. § 1351. While Plaintiff disputes the legal rationale of *Yates*, 808 F.3d 281 (6th Cir. 2015), Defendants' own authority recognizes that the potential application of the preemption doctrine to brand-name drugs turns on the facts, which therefore necessitates discovery. *Id.* at 293–300. If the Court finds that Plaintiff has not sufficiently established that the J&J Defendants targeted Louisiana, Plaintiff should be able to take discovery to develop facts that relate to: Johnson & Johnson's contacts with Louisiana; its targeting of markets in Louisiana; its involvement in the development, marketing and

sale of Invokana; it agreements with Janssen, Mitsubishi Tanabe, and related companies regarding Invokana; and Defendants' corporate structure. This type of discovery is warranted by Plaintiff because the details of the process and agreements by which Invokana came to Louisiana is not known at this time. Discovery is necessary for Plaintiff to determine what role Johnson & Johnson played in the development of Invokana, and the extent to which its role included contacts with Louisiana. In addition, discovery is necessary to uncover the arrangements between Johnson & Johnson, Janssen, and Mitsubishi Tanabe regarding who would carry out which tasks with respect to designing, developing, testing, marketing, and selling the product. Should this Court decide to entertain Defendants' faulty preemption argument, Plaintiff should be allowed to take limited discovery into the science underlying Invokana itself— its design, development, and production — how it works, and how (or if) it can be made more safe. Only limited information about Defendants' operations with regard to Invokana or about the design, development, and production of Invokana are publicly available.  If permitted to conduct discovery, Plaintiff would seek, at a minimum, Corporate Representative depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) and related document requests on the following topics: (1) Johnson & Johnson and Janssen's corporate structure; (2) their involvement in the development, manufacturing, sale, and promotion of Invokana; (3) contractual agreements among the Defendants; (4) studies and other clinical trials related to *canagliflozin*; and (5) scientific studies showing increased risks of *canagliflozin* and related communications with the FDA.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendants' Motion to Dismiss Plaintiff Gloria Guidry's Amended Complaint under Rule 12(b)(6) should be denied.

April 26, 2016                        Respectfully submitted,

                                     **NEBLETT, BEARD & ARSENAULT**
                                     */s/ Jennifer M. Hoekstra*_____
                                     JENNIFER M. HOEKSTRA (#34716)
                                     RICHARD J. ARSENAULT (#02563)
                                     2220 Bonaventure Court
                                     P.O. Box 1190
                                     Alexandria, Louisiana 71309
                                     Telephone: (318) 487-9874
                                     Fax: (318) 561-2524
                                     rarsenault@nbalawfirm.com
                                     jhoekstra@nbalawfirm.com

                                     MORRIS BART (#02788)
                                     MEKEL S. ALVAREZ (#22157)
                                     **MORRIS BART LLC**
                                     First Bank & Trust Tower
                                     909 Poydras Street, 20th Floor
                                     New Orleans, Louisiana 70112
                                     Telephone: (504) 599-3385
                                     Fax: (866) 886-6057
                                     mbart@morrisbart.com
                                     malvarez@morrisbart.com

                                     *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Defendants' counsel by operation of the court's electronic filing system.

*/s/ Jennifer M. Hoekstra*_____

27