UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GLORIA GUIDRY, * | |
| Plaintiff, * | CIVIL ACTION NO. : 2:15-cv-04591 |
| versus * | |
| * | JUDGE MARTIN FELDMAN |
| JANSSEN PHARMACEUTICALS, INC. f/k/a * | |
| JANSSEN PHARMACEUTICA, INC, f/k/a, * | |
| ORTH-McNEIL-JANSSEN * | |
| PHARMACEUTICALS, INC.; JANSSEN * | MAGISTRATE JUDGE |
| ORTHO, LLC; JANSSEN RESEARCH & * | MICHAEL NORTH |
| DEVELOPMENT, LLC; THE MITSUBISHI * | |
| DEFENDANTS TANABE PHARMA * | |
| CORPORATION; THE MITSUBISHI * | |
| DEFENDANTS TANABE PHARMA * | |
| DEVELOPMENT AMERICA, INC.; * | |
| JOHNSON & JOHNSON SERVICES, INC.; * | |
| and JOHNSON & JOHNSON COMPANY * | |
| * | |
| Defendants. * | |

* * * * * * * * * * * * * * * * * * * * * * * * * **

**PLAINTIFF GLORIA GUIDRY'S OPPOSITION TO MOTION TO DISMISS AMENDED
COMPLAINT BY DEFENDANTS THE MITSUBISHI DEFENDANTS TANABE PHARMA
CORPORATION AND THE MITSUBISHI DEFENDANTS TANABE PHARMA
DEVELOPMENT AMERICA, INC. [1]**

**NEBLETT, BEARD & ARSENAULT**
JENNIFER M. HOEKSTRA (#31476)
RICHARD J. ARSENAULT (#02563)
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71309
Telephone: (318) 487-9874
Fax: (318) 561-2524
rarsenault@nbalawfirm.com
jhoekstra@nbalawfirm.com

**MORRIS BART LLC**
MORRIS BART (#02788)
MEKEL S. ALVAREZ (#22157)
First Bank & Trust Tower
909 Poydras Street, 20th Floor
New Orleans, Louisiana 70112
Telephone: (504) 599-3385
Fax: (866) 886-6057
mbart@morrisbart.com
malvarez@morrisbart.com

---

1 To the extent Defendants Mitsubishi Tanabe and Mitsubishi Tanabe Pharma Development America, Inc.,
incorporated the Motion to Dismiss, Memorandum and Support concurrently filed by Defendants Janssen
Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson Services, Inc., and Johnson &
Johnson Company this response is similarly incorporated into the concurrently filed Opposition to Defendants
Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Johnson & Johnson Services, Inc., and
Johnson & Johnson Company's Motion to Dismiss Amended Complaint.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

ARGUMENT ............................................................................................................... 2

    1) This Court Has Personal Jurisdiction Over Mitsubishi Japan ........................... 2

        A. Plaintiff's Service Attempts are Sufficient under Fed. R. Civ. P. 12(b)(5) ............. 2

        B. Applicable Law ........................................................................................ 4

        C. This court may exercise personal jurisdiction over the Mitsubishi Defendants under Louisiana's Long-Arm Statute ....................................... 8

    2) Plaintiff's Design Defect Claims are Not Preempted ..................................... 11

        A. Entering into a Licensing Agreement Does Not Grant Immunity from Suit ............ 12

        B. Plaintiff's Design Defect Claims are Not Preempted ................................. 15

        C. The Mitsubishi Defendants' Preemption Arguments are Premature ........................ 18

    3) The Complaint Pleads Plausible Claims for Relief Sufficient to Satisfy Rule 8, and where applicable, Rule 9 ...................................................................... 19

    4) Request for Discovery .................................................................................. 19

CONCLUSION ......................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**STATUTES**

21 C.F. R. § 31.70(b)(2)(i) ..................................................................................18

Federal Rule of Civil Procedure Rule 8 ...............................................................19

Federal Rule of Civil Procedure Rule 9 ...............................................................19

Federal Rule of Civil Procedure 12(b)(5) .............................................................2

Federal Rule of Civil Procedure 12(b)(6) ...........................................................19

Federal Rule of Civil Procedure 12(d) ................................................................12

Federal Rule of Civil Procedure 30(b)(6) ...........................................................20

La. Rev. Stat. Ann § 13:3201 (A)(1), (3), (4) (8) ................................................7

**CASES**

*Albo v. Suzuki Motor Corp.*
     C.A. No. 3:08-0139-KC, 2008 WL 2783508 (W.D. Tex. July 2, 2008) ...........................3

*Allred v. Moore & Peterson*
     117 F.3d 278 (5th Cir.1997) .............................................................7

*Ansagay v. Dow Agrosciences LLC*
     No. 15-00184 SOM/RLP, 2015 WL 9582710 (D. Haw. Dec. 29, 2015) ........................18

*Asahi Metal Indus. v. Superior Court of Cal.*
     480 U.S. 102 (1987)....................................................................10

*Ashcroft v. Iqbal*
     556 U.S. 662 (2009).....................................................................2

*Bell Atl. Corp. v. Twombly*
     550 U.S. 544, 570 (2007)................................................................2

*Bordelon, Hamlin, Theriot & Hardy v. Burlington Broad., LTD.*
     94–1839, p. 7 (La. App. 4 Cir. 3/16/95); 652 So.2d 1082 ...............................5

*Brown v. Johnson & Johnson*
     64 F. Supp. 3d 717 (E.D. Pa. 2014) ...............................................................18

*Burger King Corp. v. Rudzewicz*
     471 U.S. 462 (1985)..............................................................................4, 5, 6

*Cent. Freight Lines Inc. v. APA Transp. Corp.*
     322 F.3d 376 (5th Cir. 2003) ...........................................................................6

*Clemens v. McNamee*
     615 F.3d 374 (5th Cir.2010) ............................................................................7

*Daimler AG v. Bauman*
     134 S. Ct. 746 (2014).............................................................................10, 11

*de Reyes v. Marine Mgmt. and Consulting, LTD.*
     586 So.2d 103 (La. 1991) ...............................................................................5

*EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*
     467 F.3d 466 (5th Cir. 2006) ...........................................................................4

*Fielding v. Hubert Burda Media, Inc.*
     415 F.3d 419 (5th Cir.2005) ..........................................................................19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
     466 U.S. 408 (1984)........................................................................................6

*Hunter v. Meyers*
     96-1075 (La. App. 1 Cir. 3/27/97), 691 So. 2d 318...........................................5

*In re Actos (Pioglitazone) Products Liability Litigation*
     MDL 2299, 2014 WL 4364832 (W.D. La. Sept. 2, 2014)...........................13, 14

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*
     756 F.3d 917 (6th Cir. 2014) ......................................................................13, 14

*In re DePuy Orthopaedics, Inc.*
     MDL No. 2244, 2014 WL 3567593 (N.D. Tex. July 18, 2014) ...........................8

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. 11)*
     MDL No. 2243, 2012 WL 181411 (D.N.J. Jan. 17, 2012) ................................14

*In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*
     MDL No. 2436, 2015 WL 7075916 (E.D. Pa. Nov. 13, 2015)...........................18

iv

*Int'l Shoe Co. v. Washington*
    326 U.S. 310 (1945) ........................................................................ *passim*

*Jones v. Greninger*
    188 F.3d 322 (5th Cir. 1999) ........................................................4

*Kelly v. Syria Shell Petroleum Dev. B.V.*
    213 F.3d 841 (5th Cir. 2000) ......................................................19

*Latshaw v. Johnston*
    *167* F.3d 208 (5th Cir. 1999) .......................................................7

*Leon v. Cont'l AG*
    Case No. 1:16-cv-20572-JLK, 2016 WL 1388950 (S.D. Fla. Apr. 1, 2016) ......................3

*Lowrey v. Tex. A&M Univ. Sys.*
    117 F.3d 242 (5th Cir. 1997) ........................................................4

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*
    369 F.3d 464 (5th Cir. 2004) ........................................................4

*Mink v. AAAA Dev. LLC*
    190 F.3d 333 (5th Cir. 1999) ........................................................7

*Mullins v. Ethicon, Inc.*
    No. 2:12-cv-02952, 2015 WL 7761033 (S.D.W. Va. Dec. 2, 2015) ................................16

*Mut. Pharm. Co. v. Bartlett*
    133 S. Ct. 2466 (2013) .................................................................. *passim*

*Orms v. Takeda Pharm. America, Inc.*
    Civil Action No. 10-160-JMH, 2010 WL 2757760 (E.D. Ky. July, 12, 2010) ..................3

*Ouazzani–Chahdi v. Greensboro News & Record, Inc.*
    200 Fed.Appx. 289 (5th Cir. 2006) ................................................7

*Papasab v. Allain*
    478 U.S. 265 (1986) .......................................................................12

*Paz v. Brush Engineered Materials, Inc.*
    445 F.3d 809 (5th Cir. 2006) ........................................................7

v

*PLIVA, Inc. v. Mensing*
    131 S.Ct. 2367 (2011) ................................................................................. *passim*

*Rebecca Lynn Turner, Admin. For the Estate of Connie Sue Womack Stever v. Syfan Logistics, Inc.*
    Civil Action No. 5:15cv81, 2016 WL 1559176 (W.D. Va. Apr. 18, 2016) ...................... 6

*Revell v. Lidov*
    317 F.3d 467 (5th Cir. 2002) ............................................................................. 7

*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*
    9 F.3d 415 (5th Cir. 1993) ................................................................................ 7

*Seiferth v. Helicopteros Atuneros, Inc.*
    472 F.3d 266 (5th Cir. 2006) ............................................................................. 7

*Smith v. Womans Hosp*,
    Civil Action No. 14-500-BAJ-RLB, 2015 WL 2357127 (M.D. La. May 15, 2015) .......... 3

*Stevens v. Cmty. Health Care, Inc.*
    No. ESCV200702080, 2011 WL 6379298 (Mass. Super. Ct. Oct. 5, 2011) ................... 14

*Stuart v. Spademan*
    772 F.2d 1185 (5th Cir. 1985) ........................................................................... 5

*Superior Supply Co. v. Associated Pipe and Supply Company*
    515 So.2d 790 (La. 1987) ................................................................................. 5

*Thompson v. Chrysler Motors Corp.*
    755 F.2d 1162 (5th Cir. 1985) ........................................................................... 5

*Toys "R" Us, Inc. v. Step Two, S.A.*
    318 F.3d 446 (3d Cir. 2003) .............................................................................. 20

*Trahan v. Sandoz, Inc.*
    No. 3:13-cv-350-J-34MCR, 2015 WL 2365502 (M.D. Fla. Mar. 26, 2015) .............. 17, 18

*Traigle v. Imhoff*
    96–325, 96–326, 96–327 (La.App. 5th Cir. 10/1/96); 683 So.2d 766 ............................. 5

*Walden v. Fiore*
    134 S. Ct. 1115 (2014) ..................................................................................... 6

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*
    517 F.3d 235 (5th Cir. 2008) ............................................................................5

*White v. NBA Properties, Inc.*
    Civil Action No. 14-00574-BAJ-SCR, 2015 WL 1956518 (M.D. La. Apr. 29, 2015) .......3

*Wien Air Alaska, Inc. v. Brandt*
    195 F.3d 208 (5th Cir. 1999) ............................................................................6

*World-Wide Volkswagen Corp. v. Woodson*
    444 U.S. 286 (1980).......................................................................................5, 7

*Wyatt v. Kaplan*
    686 F.2d 276 (5th Cir. 1982) ..........................................................................19

*Wyeth v. Levine*
    555 U.S. 555 (2009)........................................................................................16

## OTHER AUTHORITIES

FDA Medical Review of Invokana ......................................................................2, 12

Hague Conference/Conference de La Haye Art. 10(a) ............................................3

Hague Conference/Conference de La Haye Art. 5(1)(a)(b)......................................3

Johnson & Johnson Third Quarter 2015 Sales of Key Prods. At 2...............................10

Defendants Mitsubishi Tanabe Pharma Corporation ("Mitsubishi Japan") and Mitsubishi Tanabe Pharma Development America, Inc. (collectively the "The Mitsubishi Defendants") move for dismissal, largely on the same grounds as the remaining Defendants (i.e. Janssen Pharmaceuticals and Johnson & Johnson). Here, the Mitsubishi Defendants argue (1) that this Court lacks personal jurisdiction[2]; (2) Plaintiff's claims are preempted by federal law; and (3) the Complaint fails to state a plausible claim under the Federal Rules of Civil Procedure. In making these arguments, the Mitsubishi Defendants ignore key allegations in the Complaint which establish a plausible basis for personal jurisdiction under Louisiana's long-arm statute, and a plausible basis for each Count asserted.  The Mitsubishi Defendants, prematurely, ask this Court to drastically broaden Supreme Court preemption precedent, a fact-intensive analysis, before the plaintiff has had an opportunity to conduct any discovery.

Nevertheless, the Mitsubishi Defendants' arguments are without merit. First, the Complaint presents sufficient jurisdictional allegations. Specifically, the Mitsubishi Defendants designed and developed Invokana in collaboration with Johnson & Johnson, (Compl. at ¶ 104, 107-108, ); the Mitsubishi Defendants also participated in the manufacturing, marketing, distribution and sale of Invokana (*id*. at ¶ 6); as a result of the Mitsubishi Defendants' conduct, Plaintiff ingested Invokana and was injured, (*id*. at ¶¶ 31, 53-59, 97, 98), and the Mitsubishi Defendants' tortious conduct was directed at, or occurred in Louisiana, and resulted in personal and economic injury in Louisiana. *Id*. at ¶¶ 6, 70, 97-98, 104, 107.

Second, with respect to its preemption argument, the Mitsubishi Defendants raise factual

---

[2] Beyond the question of this Court lacking personal jurisdiction over Mitsubishi Japan, Defendants are arguing the lack of proper service on Mitsubishi Japan. Plaintiff is in the process of translating the Amended Complaint into Japanese and proceeding with Hague appropriate service via Form USM-94 thru the Central Authority.  This process can take upwards of 6 months to accomplish.

issues outside of the Complaint; disputed questions of fact that are premature and inappropriate for a motion to dismiss. For example, the Mitsubishi Defendants would have the Court believe that even though it played a key role in the development and eventual FDA approval of Invokana, it is absolved of any liability for the defective nature of the drug because its co-Defendant submitted the NDA. The truth is that the Mitsubishi Defendants played an active role in Invokana's FDA approval process and the FDA even refers to Mitsubishi Japan as the "sponsor's partner." FDA Medical Review of Invokana at 29-30, available at

http://www.accessdata.fda.gov/drugsarfda_docs/nda/2013/204042Orig1s000MedR.pdf (Feb. 8, 2013). Finally, the Mitsubishi Defendants rely entirely on Defendants Janssen Pharmaceuticals ("Janssen") and Johnson & Johnson's arguments to assert that the Complaint fails to state a claim for relief under the Federal Rules of Civil Procedure. For the reasons explained in Plaintiff's opposition to Janssen and Johnson & Johnson's motion to dismiss, The Mitsubishi Defendants' *Iqbal/ Twombly* arguments are without merit.

## ARGUMENT

### 1)  This Court Has Personal Jurisdiction Over Mitsubishi Japan.

#### A.  Plaintiff's Service Attempts are Sufficient under Fed. R. Civ. P. 12(b)(5)

Mitsubishi Japan's arguments that Plaintiff Guidry's claims should be dismissed under Rule 12(b)(5) are two-fold: (1) Plaintiff Guidry is not in compliance with the Hague Conference on Private International Law, Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters Nov. 15, 1965 14 HCCH ("Hague Convention"). when serving the Mitsubishi Defendants Japan and (2) that service was made on Joanna Garcia, at CT Corporation, which is not the Mitsubishi Japan's authorized agent for service of process.

2

Although the Mitsubishi Defendants are correct that the Hague Convention requires service to be made directly to Japan's Central Authority for the Hague Service Convention and be translated into Japanese, Japan itself has never declared that it "objects to the sending of judicial documents, by postal channels, directly to addresses in Japan." *See id.* Art. 10(a).[3] In fact, while both Germany and Japan are parties to the Hague Convention, only Germany has objected to service of judicial documents by postal channel. *Leon v. Cont'l AG*, Case No. 1:16-cv-20572-JLK, 2016 WL 1388950 (S.D. Fla. Apr. 1, 2016). (holding that Honda Japan could be served by direct mail, and that Japan did not object to Article 10(a) of the Hague Convention). Four federal circuits have concluded that service by mail is allowed under Article 10(a) of the Hague Convention, including via international express mail and FedEx. *Id.*

Further, as to the summons not being translated into Japanese, a Texas District Court previously allowed a plaintiff to have 16 additional weeks[4] to serve a Japanese defendant with a new summons, translated into Japanese, and in compliance with the Hague Convention. *See generally Albo v. Suzuki Motor Corp*, C.A. No. 3:08-0139-KC, 2008 WL 2783508, at *1, *3 (W.D. Tex. July 2, 2008). The court found that the defendant had failed to "cite any authority stating that a failure to translate a summons into a country's official language constituted a defect in form of the process." *Id.* at 3. The *Albo* rule has been relied upon in two recent Middle District of Louisiana cases. *See Smith v. Womans Hosp*, Civil Action No. 14-500-BAJ-RLB, 2015 WL

---

3 In *Orms v. Takeda Pharm. America*, *Inc.*, Civil Action No. 10-160-JMH, 2010 WL 2757760 (E.D. Ky. July, 12, 2010), not reported in F. Supp. 2d, the Court found that international registered mail could be used to serve a Complaint on Takeda. Further, the Court found that there was no requirement in the Hague Convention that documents served via registered mail under Article 10(a) of the Hague Convention be translated into Japanese. The translation requirement only applies to documents served under Article 5(1)(a)(b) of the Hague Convention. See further information at https://www.hcch.net/en/states/authorities/details3/?aid=261 (last visited April. 26, 2016).
4 Plaintiff is in the process of translating the Amended Complaint into Japanese and proceeding with appropriate service under the Hague Convention via Form USM-94 via the Central Authority. This process can take upwards of 6 months to accomplish.

3

2357127, at *1, *3 (M.D. La. May 15, 2015) and *White v. NBA Properties, Inc*., Civil Action No. 14-00574-BAJ-SCR, 2015 WL 1956518, at *1-2 (M.D. La. Apr. 29, 2015).

Additionally, Plaintiff has identified several other complaints that specifically mention CT Corporation as Mitsubishi Japan's "authorized agent for service of process".[5] Given the publicly available impression that CT Corporation and/or non-Hague Convention service on the Mitsubishi Defendants would be sufficient to avoid a motion to dismiss for insufficient service, a valid further step would be to allow Plaintiff Guidry an opportunity to resolve the insufficient service on the foreign defendants rather than dismissal and preclusion of Plaintiffs' claims.

### B.  Applicable Law

Factual disputes must be resolved in Plaintiff's favor. *See EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA,* 467 F.3d 466, 467 (5th Cir. 2006) (*citing Lowrey v. Tex. A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997)), s*ee also Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) (*quoting Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  The Due Process Clause of the United States Constitution bases the exercise of personal jurisdiction on whether the defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A state has a "manifest interest" in providing its residents with a convenient forum for "redressing injuries inflicted by out-of-state actors," particularly where the defendant "purposefully avails itself of

---

5 See generally page 3 of the following pleadings: 1) https://rpx-docs.s3.amazonaws.com/lits/853/5232/txedce-109687.pdf?Signature=2igtaThepH3ZdxaIA5kcRUOR7m0%3D&Expires=1453761600&AWSAccessKeyId=AKIA I2UWKALIEYBVOKDA and
https://www.ftc.gov/sites/default/files/documents/cases/2002/11/021112oppositiontomotionofthe Mitsubishi Defendantstoquashsubpoena.pdf

the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 475 (1985). In accordance with well-established precedent, deliberately placing products into the stream of commerce with knowledge and intent that they be sold in the forum constitutes purposeful availment. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980).

To defeat a motion to dismiss for lack of personal jurisdiction, "plaintiffs need only make a prima facie showing of jurisdiction." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235 (5th Cir.2008). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (*citing Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). Louisiana courts have determined that Louisiana's long-arm statute is satisfied when the allegations indicate the defendant's conduct demonstrated ongoing business activities within Louisiana. *See e.g.*, *Hunter v. Meyers*, 96-1075 (La. App. 1 Cir. 3/27/97), 691 So. 2d 318, 323; *Superior Supply Co. v. Associated Pipe and Supply Co.*, 515 So.2d 790, 797 (La. 1987); *Bordelon, Hamlin, Theriot & Hardy v. Burlington Broad., LTD.*, 94–1839, p. 7 (La.App. 4 Cir. 3/16/95); 652 So.2d 1082, 1085; *see also Traigle v. Imhoff*, 96–325, 96–326, 96–327, p. 5–6 (La.App. 5 Cir. 10/1/96); 683 So.2d 766, 769; *Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. at 2184. These acts cumulatively involved the deliberate engagement of significant activities within a state, as opposed to an "attenuated" affiliation with the forum. *See Int'l Shoe Co.*, 326 U.S. at 318, 66 S.Ct. at 159; *de*

5

*Reyes v. Marine Mgmt.t and Consulting, LTD.*, 586 So.2d at 106 (La. 1991).

If a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (*citing Burger King Corp.*, 471 U.S. at 477).

The Mitsubishi Defendants' conduct with its collaboration partners in the research, development, design, and FDA approval of Invokana for sale in Louisiana, which ultimately reached consumers in Louisiana, and injured Plaintiff in Louisiana, subjects it to specific jurisdiction in Louisiana.[6] Specific jurisdiction arises out of or relates to a defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotations omitted). As this Court is sitting in diversity, the exercise of personal jurisdiction is defined by Louisiana's long-arm statute. Under Fifth Circuit law, a federal district court sitting in diversity may exercise personal

---

6 *See e.g. Rebecca Lynn Turner, Admin. For the Estate of Connie Sue Womack Stever v. Syfan Logistics, Inc.*, Civil Action No. 5:15cv81, 2016 WL 1559176, at *3 (W.D. Va. Apr. 18, 2016):

> Determining the reach of judicial power of persons outside of a state's borders under the *International Shoe* standard is undertaken through consideration of two categories of personal jurisdiction – general and specific…General jurisdiction requires a substantial connection to the forum; the defendant's contacts must be so continuous and systematic as to render him essentially "at home."…Specific jurisdiction exists in a suit arising out of or related to the defendant's contacts with the forum…

jurisdiction over a foreign defendant if: (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the United States Constitution. *Clemens v. McNamee*, 615 F.3d 374, 377 (5th Cir. 2010) (*citing Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (*citing Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)); *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (*quoting Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997)); *Ouazzani–Chahdi v. Greensboro News & Record, Inc.*, 200 Fed. Appx. 289, 291 (5th Cir. 2006) (*citing Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).  Under Louisiana's long-arm statute, a court may exercise personal jurisdiction when the claim arises from, inter alia, the defendant's (1) "Transacting any business in [Louisiana]" ; (3) "Causing injury or damage by an offense or quasi offense committed through an act or omission in [Louisiana]"; (4) Causing injury or damage in [Louisiana] by an offense or quasi offense committed through an act or omission outside of [Louisiana] if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in [Louisiana]; or (8) Manufacturing of a product or component thereof which caused damage or injury in [Louisiana], if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in [Louisiana] by reason of its nature and the manufacturer's marketing practices. La. Rev. Stat. Ann. § 13:3201 (A)(1), (3), (4), (8).  To comport with due process, the defendant's conduct is such that he "should reasonably anticipate being haled into court" in the

7

forum state.  *World–Wide Volkswagen Corp.*, 444 U.S. at 297.

Moreover, this same defense was recently rejected in the Pinnacle Hip Implant MDL, and should be so rejected here. *In re DePuy Orthopaedics, Inc.*, MDL No. 2244, 2014 WL 3567593, *1-2 (N.D. Tex. July 18, 2014) (rejecting argument and finding personal jurisdiction over Johnson & Johnson). The Mitsubishi Defendants 1) developed Invokana with the intent that it be sold in the United States, including Louisiana, 2) derived substantial revenue from the sale of Invokana in Louisiana, and 3), with its subsidiary, marketed and sold Invokana in Louisiana. Defendants could have foreseen that Invokana would be found in Louisiana by reason of Defendants' marketing practices.  Accordingly, the Mitsubishi Defendants are subject to personal jurisdiction in Louisiana.[7]

### C.  This Court may exercise personal jurisdiction over the Mitsubishi Defendants under Louisiana's long-arm statute.

Defendants dispute personal jurisdiction on two grounds. First, Defendants assert that Louisiana's long-arm statute does not provide for personal jurisdiction. Defendants' assertion is clearly false. Here, the Complaint sufficiently establishes jurisdiction under Louisiana's long-arm statute. Plaintiff alleges that the Mitsubishi Defendants designed and developed Invokana in collaboration with its partners, Johnson & Johnson. Compl. at ¶ 6. Then, Johnson & Johnson's wholly owned subsidiary, Janssen, acquired the rights to market and sell Invokana to patients in Louisiana and other U.S. markets. Id. at ¶ 7. The Mitsubishi Defendants, whether directly or through their agents, collectively researched, developed, designed, licensed, manufactured, marketed, distributed, and sold Invokana in Louisiana, with a reasonable expectation that

---

[7] In the alternative, to the extent the Court finds Plaintiff's allegations insufficient, Plaintiff requests the opportunity to take discovery to further develop jurisdictional facts. *See infra* Part 4.

Invokana would be used in Louisiana. *Id.* at ¶¶ 28, 38, 39. The Mitsubishi Defendants, directly or through their agents, conducted nationwide sales and marketing campaigns, including in Louisiana, to promote Invokana. *Id.* at ¶ 63, 70. As a result of these acts, Plaintiff was prescribed Invokana in Louisiana, ingested Invokana in Louisiana, and suffered severe injury in Louisiana. *Id.* at ¶¶ 31, 53-59, 70, 97, 98.

What the Mitsubishi Defendants fail to acknowledge is that the allegations are specific, and they are alleged against all Invokana defendants, because to the extent it is known or knowable to Plaintiff, all Invokana defendants engaged in the same or substantially similar activity with regards to Invokana.  Here, the Complaint articulates the factual basis for the Mitsubishi Defendants' liability because it alleges that the Mitsubishi Defendants researched, developed, designed, licensed, manufactured, distributed, supplied, marketed and sold Invokana to Plaintiff in Louisiana. Amd. Compl. at ¶¶ 107, 108, 136. The precise details of the interrelated conduct of each Defendant are not known and not knowable by Plaintiff without discovery. Nevertheless, under the applicable pleading standard, the Complaint alleges sufficient jurisdictional facts to demonstrate a prima facia showing of personal jurisdiction under Louisiana's long-arm statute.  There can be no question of this Court's jurisdiction.

Further, Plaintiff alleges Defendants transacted and solicited a significant amount of business in Louisiana through their agents and representatives, and derived a substantial amount of revenue from Louisiana. The total sales of Invokana were so robust that the drug reported $278 million in earnings just in the first quarter of 2015, which necessarily included significant sales in Louisiana. *Id.* at ¶ 38, 39. If sales continue at such a pace, Defendants will have earned over $1 billion just on Invokana in 2015- after only being on the U.S. market since April of

2013.[8]

In summary, Plaintiff alleges that the Mitsubishi Defendants designed Invokana, and, along with its partners, placed Invokana in the stream of commerce, marketed Invokana in Louisiana, sold Invokana in Louisiana, derived substantial revenue from sales of Invokana in Louisiana, and injured Plaintiff in Louisiana. Accordingly, Plaintiff has alleged substantial factual content establishing that Louisiana's long-arm statute is satisfied and that finding personal jurisdiction over the Mitsubishi Defendants does not violate federal due process. Thus, jurisdiction is clearly established. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014) ("corporation can purposefully avail itself of a forum by directing their agents or distributors to take action there"); *Asahi Metal Indus. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) ("designing the product for the market in the forum State" or "marketing [a] product through a distributor" each can constitute purposeful availment).

The Mitsubishi Defendants misconstrue the premise and holding in *Daimler AG v. Bauman*, 134 S. Ct. 746, 761. The Daimler case has not completely eliminated the "continuous and systematic contacts test" seen in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) as it has only eliminated the test for corporations.

Assertions of jurisdiction over the person of the defendant by courts of the United States must comport with due process in order to be enforceable either by the court rendering the judgment or by other state or federal courts. The defendant must have such "minimum contacts" with the forum that the assertion of jurisdiction by it does not offend "traditional notions of fair

---

[8] Invokana sales are likely to far exceed this number, as Johnson & Johnson earned **$890 million** on U.S. sales of Invokana in the first 9 months of 2015. *See* Johnson & Johnson Third Quarter 2015 Sales of Key Prods. at 2*, available at http://files.shareholder.com/downloads/JNJ/1188176531x0x854183/3152FFAB-82A7-4F38-AA75-D25F107767DB/Sales_of_Key_Products_Franchises_3Q2015.pdf.*

play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.

In *Daimler,* the Court found the defendant to have very limited contacts with the State so as not to "render it at home there." *Daimler AG*, 134 S. Ct. at 760.  In contrast, a search for "The Mitsubishi Defendants" on the Louisiana Secretary of State's website revealed 49 results, including "The Mitsubishi Defendants America".  Without further discovery and confirmation of the relationship between the Mitsubishi Defendants, it is plausible that Plaintiff could have believed The Mitsubishi Defendants America to be involved directly in the development, manufacture, distribution and marketing of Invokana.

**2)  Plaintiff's Design Defect Claims Are Not Preempted.**

Next, Defendants try to shoehorn this case, which involves a brand-name drug, into the Supreme Court generic drug preemption decisions, *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2367 (2011) and *Mutual Pharmaceutical Company v. Bartlett*, 133 S. Ct. 2466 (2013), arguing that all design defect claims are preempted as a matter of law under two distinct legal theories. First, the Mitsubishi Defendants claim they are entitled to design, develop, and profit from a drug, but avoid liability for the damaged caused because of their licensing agreement with Janssen. Second, the Mitsubishi Defendants ask the Court to broaden the holding in *Bartlett* to encompass brand-name drug manufacturers, in order to avoid liability for damages caused by defects in their own products even if they knew the drug to be unreasonably dangerous. Thus, Defendants seek to reap the profits from its enterprise, while remaining immune from liability. Even if the Court wishes to entertain these faulty legal theories, they implicate fact-specific issues that cannot be addressed prior to discovery. The Mitsubishi Defendants' preemption arguments are both premature and without merit.

11

### a) Entering into a licensing agreement does not grant immunity from suit.

Defendants are "engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, . . . the prescription drug Invokana." Compl. at ¶ 1, 104, 136. After designing and developing Invokana, the Mitsubishi Defendants entered into a licensing agreement with Janssen, whereby its co-Defendant acquired the rights to market and distribute Invokana. *Id.* at ¶ 107. The Mitsubishi Defendants claim that Janssen holds the NDA for Invokana. Based on this claim, Defendants compare themselves to a generic drug manufacturer, unable to change the design or labeling of Invokana, and immune from liability. Thus, Defendants' arguments are based on the identity of Invokana's NDA holder, which is a factual issue outside of the Complaint. Pursuant to Rule 12(d), the Court should either exclude this extraneous material, or convert Defendant's motion to one for summary judgment, therefore giving Plaintiff ample notice and time to conduct the necessary discovery. However, even if the Court takes judicial notice of the Mitsubishi Defendants' factual assertion, the Court must construe all facts "in the light most favorable to the [Plaintiff]." *Papasab v. Allain*, 478 U.S. 265, 283 (1986).

In inserting this factual issue, Defendants conveniently neglect to mention that Mitsubishi Japan actively participated in the FDA approval process. The FDA's medical review identifies Mitsubishi Tanabe Pharma Corporate as "the sponsor's partner," and explains that it received and relied on Defendants' research and clinical trials during the approval process. See FDA Medical Review of Invokana at 29-30, available at www.accessdata.fda.gov/drugsarfda_docs/nda/2013/204042Oril1s000MedR.pdf (Feb. 8, 2013).

Because this motion had been filed before Plaintiff received any discovery, Plaintiff lacks access to the evidence necessary to determine the full extent of the various Defendants' involvement in the approval process. Nor can Plaintiff access information on Mitsubishi Japan or Mitsubishi America's influence over other pivotal issues affecting the design, labeling, marketing, and promotion of Invokana. However, it is clear that these Defendants are not the powerless bystanders they claim to be. Construing all facts in the light most favorable to Plaintiff, Defendants certainly cannot show preemption should apply.

The recent case In re Actos (Pioglitazone) Products Liability Litigation, MDL No. 299, 2014 WL 4364832 (W.D. La. Sept. 2, 2014) examined many of these same issues, albeit with the benefit of a fully developed record. In Actos, plaintiffs filed suit against Takeda and Eli Lilly for damages caused by a brand name drug. The defendants had a co-promotion agreement regarding the sale of Actos in the U.S., but Takeda held the NDA. *Id.* at *1-2. The jury ultimately entered a verdict against both defendants. *Id.* at *20-23. Eli Lilly sought post-judgment relief under the preemption doctrine, arguing it should be treated like a generic drug manufacturer. *Id.* at *1, *17-23. The court examined the factual record, noting that Eli Lilly participated in formulating the drug's label and marketing materials. *Id.* at *9, *11-13, *19.  Therefore, the rationale underlying preemption of claims against generic drug manufacturers was not applicable. *Id.* at *17. Eli Lilly had the ability to affect the drug's warnings and the duty to provide an adequate warning, so preemption did not apply. *Id.* at *19.

Here, Defendants rely on *In re Darvocet, Darvon & Propoxyphene Products Liability Litigation*, 756 F.3d 917 (6th Cir. 2014), which involved claims brought against a former brand name drug manufacturer that sold its NDA after the drug went generic. *Id.* at 923-24. The

13

plaintiff filed suit eight years later, claiming defendant had continued to manufacture a generic form of the drug. *Id.* at 940. Because the defendant had completely divested itself of its rights over the drug and had no power over the drug's warnings, the court found plaintiff's warning-based claims were preempted. *Id*. However, *In re Darvocet* is distinguishable in two key respects: Invokana is not a generic drug, and the Mitsubishi Defendants have not sold all rights to them. Defendants' remaining authority, all of which involve claims against the distributor, are equally distinguishable. *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. 11) MDL No. 2243*, 2012 WL 181411 (D.N.J. Jan. 17, 2012); *Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298 (Mass. Super. Ct. Oct. 5, 2011). The Mitsubishi Defendants are not middleman distributors nor are they powerless generic drug manufacturers. The Mitsubishi Defendants designed and developed Invokana, provided support for the drug's FDA approval, granted the distribution rights to its co-promoters, and generated revenue from the drug. As with the co-promoters in Actos, there is no basis for preemption.

Because this motion was filed before discovery has occurred, Plaintiff is in the position of making legal arguments in the abstract, based only on publicly available information. Without discovery, Plaintiff cannot know the precise powers or rights Defendants retained under the licensing agreement; roles involved in the labeling, design, promotion, and sale of Invokana; or the extent of its participation in the FDA approval process. These facts are highly relevant to the Court's analysis. *See In Re Actos*, 2014 WL 4286927, at *9, *11-13, *19 (analyzing co-promotion agreement, marketing activities, involvement in warning-related decisions, and communications with the FDA as part of the preemption analysis). Therefore, the Mitsubishi Defendants' preemption arguments are premature in the instant case.

14

As we remain at the motion to dismiss stage, Plaintiff lacks the factual record necessary to fully formulate her argument. But here, like Actos, multiple pharmaceutical manufacturers have entered into an agreement regarding the marketing and distribution of brand name drugs that have caused significant harm. Furthermore, like Actos, there is no "sameness" requirement[9] preventing the Mitsubishi Defendants (or any other Defendant) from ensuring that Invokana is not inherently defective or that Invokana's labeling, marketing documents, and other materials adequately warn of the risks. When viewing all factual allegations in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, there is no basis for preemption.

**b) Plaintiff's design defect claims are not preempted.**

The Mitsubishi Defendants' next argument mirrors that of its co-Defendants, seeking to expand the Supreme Court generic drug preemption decision, *Mutual Pharmaceutical Company v. Bartlett*, 133 S.Ct. 2466 (2013), to preempt all pharmaceutical design defect claims. In essence, Defendants argue that they should be able to develop, market, and sell a drug without any financial responsibility for the damage it may cause — even with knowledge that the drug is unreasonably dangerous— until the FDA affirmatively steps in to stop them. Thus, Defendants posit that the FDA should serve as de facto judge and jury, leaving Courts without power and consumers without remedy. Such a premise should be rejected in the instant case.

The Supreme Court's preemption rulings evidence a distinct dichotomy in how the Court views claims against the generic and brand name drug manufacturers. With respect to failure to warn claims, the Court has held that claims against brand name drug manufacturers are not preempted by federal law, whereas most claims against generic manufacturers have been

---

9 *See infra* Part 2b.

impliedly preempted. *Wyeth v. Levine*, 555 U.S. 555, 573 (2009) (regarding brand name drug manufacturers); *Mensing*, 131 S.Ct at 2578 (regarding generic drug manufactures). In *Bartlett*, the Court ruled that certain generic design defect claims are preempted. 133 S.Ct. at 2479. The Supreme Court has never held that federal law preempts claims against a brand name drug manufacturer. In fact, the deciding factor in both *Mensing* and *Bartlett* ultimately turned on a generic drug manufacturer's inability to change a drug's label. *Id*. at 2478-79.

As explained in Plaintiff's response to Janssen and Johnson & Johnson's motion to dismiss, and the many cases cited therein, the preemption findings in *Mensing* and *Bartlett* rely on the duty under federal law of "sameness" in drug labeling imposed only on generic drug manufacturers to match the brand name counterparts, and therefore are not applicable to brand-name drugs. *Mensing*, 131 S.Ct. at 2576-78; *Bartlett*, 133 S.Ct. at 2476-77; Doc. 24 at 7-11. None of these cases would support expanding *Mensing* to preempt design defect claims against brand-name drug manufacturers.

Despite this clear limiting language, the Mitsubishi Defendants suggest the Court should focus on two isolated clauses from *Bartlett* and *Mensing* (*Bartlett*, 133 S.Ct. at 2471: "whether generic or brand-name"; *Mensing*, 131 S.Ct. at 2581: "without the Federal Government's special permission and assistance"), and combine them to create an entirely new category of impossibility preemption affecting brand-name design defect claims. See Def.'s Mem. at 18. The recent medical device case, *Mullins v. Ethicon, Inc.*, No. 2:12-cv-02952, 2015 WL 7761033 (S.D.W. Va. Dec. 2, 2015) rejected this argument, finding Bartlett declined to apply the impossibility preemption standard proposed by Defendants. *Id*. at *5-6.

The defendants' argument demonstrates their misunderstanding of the nature of the

16

impossibility found in *Mensing*, which was the direct conflict between the "state law duty to change the label and the[ ] federal law duty to keep the label the same."  In *Mensing*, there was no official regulatory process by which a generic drug manufacturer could change its drug's label, thus the generic manufacturer was "barred" from taking the required state law action. That case differed completely from Defendants' situation in the instant case. Unlike the law imposing the duty of sameness for generic drug manufacturers, there is no federal law prohibiting design changes to medical devices, particularly changes representing advances in safety. *Id.* at *6.

*Trahan v. Sandoz, Inc.*, No. 3:13-cv-350-J-34MCR, 2015 WL 2365502 (M.D. Fla. Mar. 26, 2015), also rejected the Mitsubishi Defendants' argument, cautioning against reliance on *Bartlett's* "generic or brand name" clause in isolation. Instead, the clause must be examined in context, taking into account existing Supreme Court precedent. *Id.* at *6, n.5. *Bartlett* explicitly recognized that "federal law establishes no safe-harbor for drug companies." 133 S.Ct. at 2479. And the *Wyeth* Court found that Congress did not intend for FDA oversight to preempt state tort law. 555 U.S. at 574-75. In fact, the Court recognized the vital importance of state tort suits, which incentivize the prompt disclosure of drug safety risks, and compensate injured parties. *Id.* at 579. In this context and on this basis, Trahan held:

> [T]his Court does not interpret the *Bartlett* decision to change course and foreclose all design defect claims against prescription drug manufacturers in the absence of an express statement that it was doing so. To the contrary, because the *Bartlett* Court stated its express understanding that it was not providing a safe-harbor for drug companies, the Court declines to interpret *Bartlett* in such a way as to preempt [plaintiff's] claims . . . .

2015 WL 2365502, at *6, n.5.

Notwithstanding Defendants' arguments, the "sameness" requirement that led to preemption in *Mensing* and *Bartlett* does not apply to brand name drug manufacturers. Therefore, claims

17

against brand name drug manufacturers are not preempted. *See Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 721 (E.D. Pa. 2014) (*Bartlett* preemption does not extend to brand name drugs); *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig., MDL No. 2436*, 2015 WL 7075916, at *21-24 (E.D. Pa. Nov. 13, 2015) (holding same); *Trahan*, 2015 WL 2365502, at *6 (preemption does not affect duty to design reasonably safe product prior to FDA approval). *See also Ansagay v. Dow Agrosciences LLC*, No. 15-184, 2015 WL 9582710, at *10 (D. Haw. Dec. 29, 2015) ("Unsurprisingly, courts construing *Bartlett* and *Mensing* have pointed out that preemption in both cases depended on the defendants' status as generic drug manufacturers.").

### c)  The Mitsubishi Defendants' preemption arguments are premature.

Defendants' preemption arguments are fact-based and inappropriate at the motion to dismiss stage. As set forth above, the Mitsubishi Defendants' failure to warn preemption argument implicates the terms of the Defendants' licensing agreement; the rights and responsibilities the Mitsubishi Defendants retained over Invokana; the extent of the Mitsubishi Defendants' participation in the approval and labeling of Invokana; and its involvement in the marketing and promotion of the drug. None of these facts are currently available nor are they before this Court. Defendants' design defect preemption argument also implicates important factual questions. The argument's foundation, faulty as it may be, rests on the presumption that Plaintiff's claims implicate a "major change" under FDA regulations, triggering the need for FDA approval. See 21 C.F.R. § 31.70(b)(2)(i). This issue has yet to be determined. As such, the Mitsubishi Defendants' preemption arguments are premature, rest on a faulty interpretation of the law, and are wholly without merit.

**3)  The Complaint Pleads Plausible Claims For Relief Sufficient To Satisfy Rule 8, and Where Applicable, Rule 9 of the Federal Rules of Civil Procedure.**

These allegations are well-pled in sufficient detail, given the facts available to Plaintiff without specific discovery into the corporate relationships between the licensee, licensor, distributor, marketer and developer of Invokana, to remain viable pending the current FED. R. CIV. P. 12(b)(6) dismissal.  All legal considerations and alleged facts point to the conclusion that dismissal under Rule 12 at this point would be, if not error, certainly premature. The Federal Rules of Civil Procedure require the party moving for dismissal to carry the burden of proving that no claim has been stated.

The Mitsubishi Defendants rely wholly on its co-Defendants' arguments to claim that the Complaint does not satisfy FED. R. CIV. P. 8 and where applicable, FED. R. CIV. P.  9.  As Plaintiff has previously explained, Defendant's arguments regarding the pleading standard are without merit. Therefore, Plaintiff hereby incorporates her response to the Janssen and Johnson & Johnson Defendants herein.

**4)  Request for Discovery**

To the extent the Court chooses to entertain the Mitsubishi Defendants' jurisdiction or preemption arguments, Plaintiff respectfully requests the Court to condition its decision on the outcome of limited discovery and in doing so, grant Plaintiff leave to conduct such discovery. The Mitsubishi Defendants posit that its status as a foreign corporation serves particularly to insulate it from jurisdictional discovery. However, Plaintiff has alleged substantial jurisdictional facts which, at the very least, entitle Plaintiff to limited discovery on that issue. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982) (the Court has broad discretion to permit a party to conduct jurisdictional discovery); *see e.g. Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th

19

Cir. 2005) (". . . factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts ... the plaintiff's right to conduct jurisdictional discovery should be sustained." (*quoting Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir.2003)).  As set forth above, Plaintiff sufficiently establishes personal jurisdiction over The Mitsubishi Defendants. Should the Court disagree, Plaintiff's allegations coupled with Invokana's astronomical sales figures make a colorable showing that the Court may exercise personal jurisdiction over the Mitsubishi Defendants. This is more than sufficient to justify jurisdictional discovery. If permitted to conduct discovery for jurisdictional and preemption purposes, Plaintiff would seek, at a minimum, Corporate Representative depositions pursuant to FED. R. CIV. P. 30(b)(6) and related document requests on the following: (1) Mitsubishi Japan's corporate structure; (2) its involvement in the development, manufacturing, approval, labeling, sale and promotion of Invokana; (3) the sale, distribution, and marketing of Invokana in Louisiana; (4) contractual agreements among the Defendants; (5) studies and other clinical trials related to Invokana; (6) the design, development, and testing of Invokana; and (7) scientific studies showing increased risks of Invokana and related communications with the FDA.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, this court should deny Defendants Mitsubishi Tanabe Pharma Corporation and Mitsubishi Tanabe Pharma Development America, Inc.'s Motion to Dismiss Plaintiff Gloria Guidry's Amended Complaint.

April 26, 2016                     Respectfully submitted,

                                  **NEBLETT, BEARD & ARSENAULT**

                                  */s/ Jennifer M. Hoekstra*
                                  JENNIFER M. HOEKSTRA (#31476)
                                  RICHARD J. ARSENAULT (#02563)
                                  2220 Bonaventure Court
                                  P.O. Box 1190
                                  Alexandria, Louisiana 71309
                                  Telephone: (318) 487-9874
                                  Fax: (318) 561-2524
                                  jhoekstra@nbalawfirm.com
                                  rarsenault@nbalawfirm.com

                                  MORRIS BART (#02788)
                                  MEKEL S. ALVAREZ (#22157)
                                  **MORRIS BART LLC**
                                  First Bank & Trust Tower
                                  909 Poydras Street, 20th Floor
                                  New Orleans, Louisiana 70112
                                  Telephone: (504) 599-3385
                                  Fax: (866) 886-6057
                                  mbart@morrisbart.com
                                  malvarez@morrisbart.com

                                  *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2016, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Plaintiff's counsel by operation of the court's electronic filing system.

*/s/ Jennifer M. Hoekstra*_____